Case number 18-5047 and 18-5110, Joel Naselroad v. Dennis Mabry, et al. Argument not to exceed 15 minutes for plaintiff and 15 minutes to be shared by defendants. Mr. Wells, you may proceed for the appellant. May it please the court, counsel. With the court's permission, I'd like to reserve three minutes of my time for rebuttal. As said, my name is Trevor Wells. I'm here on behalf of Joel Naselroad and appreciate the opportunity to argue for the reversal of the summary judgment the district court entered in favor of the defendants, Deputy Craycraft and Trooper Mabry. I think there are a number of sort of intellectually intriguing issues here, but I'm actually going to start with the cross-appeal issue regarding Heck v. Humphrey, which is the principal procedural difference between the way we were when we were here a couple years ago and the way we are today. And I guess the first thing I'd like to say with regard to the cross-appeal Heck v. Humphrey issue is that as I perceive it, Deputy Craycraft's reply brief, fourth brief, whatever we call that, articulates an argument that's a little different from the one he articulates below in that the argument below was no citation to Franks. It wasn't a contention about false or recklessly untrue statements in regard to the affidavit for the search warrant, but rather a fruit of the poisonous tree and a contention that the affidavit should have included information about the location of where certain events took place. For that reason, the record as developed on remand focused on the good faith of the affiant, Lieutenant or Detective Ham. As I interpret the argument being made in that reply brief, it's that Ham's individual innocence or good faith doesn't matter because bad faith on behalf of the people upstream, which a judgment in Mr. Nasalroad's favor would imply, means the X rule is applicable no matter what. I would acknowledge that I guess the tricky thing here is that at least in this circuit, that wouldn't be enough to create a Franks violation in the first place. In United States v. Giacalone, G-I-A-C-O-L-O-N-E-8-53-F-2-4-70, the court held under Franks, suppression is required only when the affiant, emphasis in original, deliberately lied or testified in reckless disregard of the truth. When the affiant has bad information, that doesn't create a Franks situation. But the allegation, and there's no Sixth Circuit authority, I'm sorry? Can you help me out a little bit just to make sure I'm getting everything you're saying? Sure. So there's an excessive force component to this case and there's a Fourth Amendment component to this case? Correct, Your Honor. So I take it there's not a heck problem with the excessive force? There's not a heck problem with the excessive force. There's not a heck problem with the malicious prosecution claim. It only relates to the unlawful entry claim, I believe, Your Honor. So how does it work? Help me out a little bit since you're starting here. This isn't what I was expecting, but that's fine. It's your call. With the Fourth Amendment claim, so you can't go to habeas with Fourth Amendment claims in light of Stone v. Powell. So how does that work? How does heck work with Fourth Amendment issues? Well, I mean, the case law… It's odd to me. I'm just… Yeah, I mean, and it was real odd to me 20 seconds into the oral argument last time when the heck v. Humphrey issue popped up, and I hadn't thought about it before, but… You thought you'd preempt us this time. Well, yeah. What if we leave you alone on heck? I think we could probably strike a deal on that grounds. I'd probably take that. No, I mean, I think it's clearly an issue in the case and an issue at this point that needs to be decided. Okay, so back to the point. Sure. You can't… So the typical problem with heck is you would… If you win under 1983, it would imply that you should not have been convicted. That's the typical problem. Correct, and it would necessarily impugn the state court criminal judgment. But you can't bring Fourth Amendment claims in habeas, Stone v. Powell. So how does that work? I'm just trying to figure it out. I mean, theoretically, we would have had to bring it in the state court criminal proceeding, not in a post-conviction, but prevail in that level. And if we had done so, then we could have brought it as a 1983 claim, I guess would be the argument. The underlying. Okay, that makes sense. So if we'd moved to suppress in the state court criminal proceedings and won then, then we could bring the unlawful entry claim. Our contention is that the sort of merits of the United States v. Leon issue means that even though, even if we had brought that issue, that the evidence would have been found to be admissible. And that is what the district court in this case determined on remand, is that the affiant, Lieutenant Detective Ham's good faith, would admit that the exclusionary rule would not have been applicable in this situation. So the evidence would have come in at the state court criminal proceedings in any way. So our claim, therefore, does not impugn the underlying state court criminal judgment. Do you want to talk about exigent circumstances? Sure. I was obviously further down the list in my plan, but I'll go where you want to go. With regard to exigent circumstances, which is their contention why the unlawful entry claim, or one of the arguments why the unlawful entry claim is invalid, there is no constitutional violation and or they're protected by qualified immunity, is that they were authorized by exigent circumstances to enter into the curtilage of the property. We believe this is inaccurate because they lacked probable cause. There are a bunch of different arguments I think they make as to why exigent circumstances, some of them are made more cursorily than others. The principle one and the one that the district court agreed with was that exigent circumstance in the form of preventing the destruction of evidence, specifically marijuana plants, would justify the entry into the curtilage. Our argument for why that is untrue is that they could not demonstrate probable cause, that there were in fact marijuana plants to be destroyed in the first place. Really? Well, I thought they knew from the, I thought they'd had this, hadn't they gotten a tip about?  And wasn't it a small enough number that they would be readily destroyed if they wanted? The tip alone didn't constitute the probable cause. That's why they were doing a knock and talk rather than a. No, we just put it in its best light. In its best light, they know it's a small number of plants. They arrive. You've got these glass windows. The minute they arrive, either by happenstance or because he's going to destroy them, he exits out the back. I mean, that's, I don't know, that seems like a reasonable fear that he's going to go destroy them. The case law suggests that in order for that exigent circumstance to be applicable, they have to be able to show that it is probable that imminent destruction of evidence. Our contention is that in a world where it is not probable that those plants exist at all, and that's the probable cause determination, that they can't access that. It just seems like there are two options. Option A is that he just happened to be leaving the back door of the house when they arrived innocently, and option B wasn't innocent at all. He was going back there to destroy the plants. But in order to prove that option B is probable and to access that aspect of exigent circumstances, they had to have more evidence and a more substantial factual basis that there were marijuana plants than an uncorroborated tip. Circling back to the malicious prosecution issue, this one is really only an issue because of the unique procedural posture presented by the disposition of the previous appeal. Substantively, the trial court's summary judgment on the state court common law malicious prosecution claim just simply can't hold after Martin v. O'Daniel, which the Kentucky Supreme Court decided sort of in the interim of the appeal. And now providing false information is sufficient to meet the procuring element of malicious prosecution under Kentucky state law. Now, if this court had affirmed the summary judgment two years ago, either initially or after the defendants asked the court to do so on rehearing, then I'd likely be talking about a different issue now. But they didn't. The whole bottle of wax went back on a reversal. Nothing was affirmed by the prior decision. And then when we get back there in that posture and with an intervening change in law, the malicious prosecution claim is clearly sufficient to satisfy the summary judgment standard and so should be remanded for trial on that. I would like to discuss the excessive force claim. I think the disposition of the issue boils down essentially to how one defines the clearly established inquiry. Supreme Court has been real clear on the fact that we can't do this at a high level of generality. There's also a case law that makes it clear that you can't do it too narrowly at a granular level. And the ultimate reason it exists is fair warning. Our contention is that Brandenburg v. Cureton sets appropriate goal posts between high level of generality and granular detail. Deadly force is impermissible against someone who doesn't have a firearm pointed at you. Now- Doesn't have a firearm pointed at you, what do we make of this case? There's evidence, there's a genuine issue of material fact as to whether a firearm was pointed at Trooper Mabry when he shot at Joel Nasel Road. So everyone agrees he had the gun. He had a firearm. And with your hands, what would you say the evidence shows? Was it just pointing down? Pointed in a low ready position. So both hands on the gun and- I don't know if there's both hands on the gun. I didn't mean to represent that. Isn't that what he said? I think that's correct, but as I stand here right now I can't remember. I think that is the case. That seems to me that's the way we look at it. So low ready like this and if you're the officer you only wait until it gets to here? I mean you can't do anything until it gets to here? I mean that seems really risky. In Brandenburg the gun was in the guy's hand. The guy had fired warning shots in the air. The guy had threatened to kill the officers. And this court said that unless that's pointed at the officer, then there's a jury issue as to qualified immunity. When that individual was shot, where was the gun pointed? Not at-I mean I don't know that the decision says where it was pointed, but it wasn't pointed at the officer. Was it low ready? I don't believe it was low ready. If we don't have a low ready case, why isn't that a clearly established problem? Well, I think Trooper Mabry wants to define the standard more favorably and I think in a manner, you know, low ready, a different tactical position. These are the equivalent of the granular detail this court has analogized to left-handed police officers during Tuesday siestas level of specificity. If the law requires us to show that, then we lose. But the law doesn't require that level of specificity. There's multiple case law from this jurisdiction that says if a firearm is not pointed in the direction of the officer, then the qualified immunity is unavailable. Thank you, Your Honor. Thank you, Counsel. May it please the Court, Mr. Wells, Mr. Cole, my name is Barry Stills and I have the pleasure today to represent Detective Mark Craycraft in this case. Detective Mark Craycraft was a detective in the Clark County, Kentucky Sheriff's Department on October 8, 2013 when this event happened. Detective Craycraft is the one that received a tip or information from a neighbor by the name of Betsy Spangler. She gave her name. This was not a bare, just bare bones, anonymous tip. She gave her name. She gave her location. She gave a general direction of where the plants were being cultivated and also described, I believe she said that there were three plants that were being cultivated. With that information, Mr. Craycraft gathered together his, I forgot, Your Honors, I'm taking seven and a half minutes of this. I apologize for that and splitting that with Mr. Cole. Thank you. He took that information, gathered his, several of the colleagues in what is called a DESI unit, which is a Drug Enforcement and Special Investigations Unit. It is a hybrid Kentucky State Police and local police officers. They took a uniformed police officer with them to do a knock and talk. The uniformed police officer and Detective Craycraft go to the door of the Nasal Road residence, knock on the door. There is some dispute as to where Mr. Craycraft was. If you read Mr. Nasal Road's mother's testimony, she says that only Officer Gurley, the uniformed officer, was at the door. Mr. Craycraft had already gone around to the side of the house and was at the mouth of what's called a breezeway, which, as I understand it, was off of the driveway and led down to a side door. It was not gated off. It was open to the public to try to access the area that way. What this case boils down to is there is no case. Judge Reeves found this case to be an exigent circumstances case, and I think he was absolutely correct. The prior decision in this case, when we were up here exactly two years ago today, required a remand and reversal to address a sole issue, and that was the heck argument. We've addressed that. Judge Reeves denied the applicability of heck. I've taken a protective appeal for that purpose. I believe heck could apply in this situation. Let's talk about exigent circumstances now. Yes, sir. You have the tip of the three marijuana plants. Is it a glass door at the front? It's a glass door at the front. If you take it in a light most favorable to the plaintiff, which we have to do, Ms. Bangler put Detective Craycraft over to the side at the mouth of a breezeway. He could see Officer Gurley, a uniformed officer, at the door, and then he can see Mr. Naslerow dressed in camouflage go past the breezeway, even if he'd accept that. Mr. Craycraft would say that he was at the door, saw Mr. Naslerow go out the back door. I'm not here to argue the facts. I know I would lose on that if I did, because this is a summary dismissal. But if you take that, it has to be judged from what the objectable, reasonable officer on the scene would conclude. He can draw certain conclusions using his natural senses. But what is it that made it exigent? I mean, they know three marijuana plants. They know that can be easily destroyed. But what's the other fact? He's heading in the direction that marijuana plants can only be grown on this property, and that was toward the Spangler property, the back of the Spangler property that joined it. He's heading in that direction. And the only thing that Detective Craycraft did that's undisputed in this case is that he entered this breezeway and said, hey, buddy. And they claim that is in violation of the curtilage. I would suggest that it is not clearly established that what he did in doing that, it wasn't clearly established in October 2013, that what he did in effecting that knock and talk was clearly established, that he couldn't do that, that that would have been objectively unreasonable. In fact, the cases of Hardesty from this circuit, the cases of Turk, would support that approach. Now, those have been called into question very recently, and I submitted on Monday when I was preparing for this argument, and I apologize about that, but I found two cases that this court had just recently decided. One in September, a case called Morgan v. Fairfield County, and another case called Brennan that it decided in October of 2015. It basically said that Hardesty and Turk would be no longer good law in light of the Florida v. Jardines decision that Justice Scalia rendered in 2013. That... Are you making a curtilage argument right now, or are you making... I'm making a clearly established argument. I'm sorry. I'm sorry, Your Honor. Clearly established on which point? Curtilage. That he didn't have the right to step into the curtilage to do... I thought the way this worked was going up the front walk, even for knock and talk, is in the curtilage, but the reason we allow it is you've got a path, and you don't have do not enter signs, and you have a doorbell, which suggests people can come use the doorbell. But once you get beyond that, I thought you were in trouble. No, I don't think so, Your Honor. If you look at the case law here in the Sixth Circuit under Hardesty, Turk, that's not the case. That wasn't the case. Does all of this matter if there are exigent circumstances? No, but this court can confirm on any basis that's supported by the record. Exigent circumstances... You think curtilage is the better one? It's the easier... I believe it's the plaintiff's obligation to show that there was a case or precedent that put Detective Craycraft on notice that what he was doing was objectively unreasonable in entering the curtilage and going around and trying to contact another person in the backyard by saying, hey, buddy. And what he was greeted with when he said, hey, buddy, was the gentleman turning and pointing a .25 automatic at him. Might have wanted to stay at the front door. Well, I would agree that's a... Justice Scalia said that the Girl Scouts and all that know how to go to the front door of a house, but then a year later in Carroll v. Carman, the Supreme Court came down with a decision that there's no clearly established law that a knock and talk has to start at the front door. It doesn't have to start at the front door. You can go to another door. This is a breezeway. This is a breezeway that leads off of these people's driveway. There was no gate. There was no do not enter. There's nothing that says visitors aren't welcome to go down that breezeway. Doorbells or knockers down there, though, are there? I don't think there was doorbells. There's been no testimony, Your Honor, that there was a doorbell or knocker on the front door. The door that they chose to go to, it actually had a sheet over top of it. It was a glass sliding door. But they went there and she answered, right? She did. So it's not like you need to find another door. But, Judge White, the question that would be not clearly established is are you limited? Is that what it says? If you have an answer there, you can't engage anyone else around the house during a knock and talk? I don't think that's been answered. That's why the clearly established prong of Pearson v. Callahan is a very critical piece of this. The malicious prosecution claim that Mr. Wills discussed, we've addressed that. He's firmly abandoned and waived that claim. He abandoned and waived that claim in his first brief to this court back in 2016. But didn't the law change in between? O'Malley v. O'Daniel did not change, or Martin v. O'Daniel, excuse me, did not change but one element of malicious prosecution under Kentucky law. Judge Reeves found that the plaintiff was lacking in three elements. Probable cause. The instance argument, which did change. And also, I'm drawing a blank, I apologize. Malice. Those two elements he also still has to braze. And those didn't change. Those did not change. And I would direct the court in also preparing for this to the case of Burley v. Gagaki. It's a Sixth Circuit 2016 case that basically says when a party makes a strategic decision about not pursuing certain appeals and then they may get another remand back, that they don't get a second bite of the apple. They're stuck with consequences of what the strategic decision to make. Has the first time up there been an affirmance? The first case, when it first appeared up here, there was a question, and I believe it was by Judge Batshelter, about why heck doesn't apply to this. Heck does. The actions that they're asking to take do imply any, Heck says if you're trying to take action to imply any conviction. And counsel, your time has run out. No, I apologize. You have to ask a bunch of questions. I will stand on my briefs and thank your honors for my time and ask that the decision of the Eastern District of Kentucky be affirmed. Thank you. Thank you. May it please the court, Mr. Wells, Mr. Stills. My name is Charles Cole and I represent Dennis Mabry, who is a trooper sued in his individual capacity. As to Mr. Mabry, he arrived in this backyard. He was standing next to a fire pit. He was exposed and he sees Craycraft, that's Mr. Stills' client, taking cover below. What he also sees is Mr. Nasalroad with a pistol that has been drawn from a holster. Holster is important because the plaintiff, in this case, placed significant emphasis that holster was inside and it was holstered. He's outside seeing someone not with a rifle but with a pistol drawn. And he was close enough in the testimony from Mr. Nasalroad that he could actually see Mabry's face. At that time, Mabry said, drop it. And his testimony in the record is, I went to pull it. Then he heard drop it, drop it. And his further testimony is he's turning backwards and forth with this pistol going from Craycraft to Mabry. He's told drop it, drop it, drop it, state police, then he is shot. It's important to note where he is shot. He's shot in the chest, indicated that he was turning towards Mabry. Those are the facts of Dennis Mabry's participation in this case. As far as giving a warning, he did say state police. But you've got to take this from an officer in a reasonable officer's position. In the case law of a reasonable officer in this position, Detective Dennis Mabry was not at the front door. He believed this was a marijuana pull going to pull marijuana. He was back at his truck putting on his muck boots and his vest when this whole thing took place. According to our recent... You've got to admit this is not the finest day for police. Three marijuana plants and before you know it, people are shooting at each other. It's pretty ridiculous. Your Honor, again, he believed that he was going to a marijuana pull. And what he is saying, he learned on the way that it was... Three marijuana plants. I mean, call it a marijuana pull, it's three marijuana plants. I'm not saying they're not allowed to investigate, but sometimes it seems to me you ought to consider exactly what's at stake. Is it escalated, you know? But that is where we get into the segmenting position that has now been clarified by this Court and the Supreme Court, and that is looking at when the use of force was made. So regardless of whether this entry on the property by Craycraft was constitutional, it's got to be segmented from the use of force itself, which I just described of that low-ready pistol going back and forth. In addition, if you get into that, then he... Mabry's back there and he's looking at them at the front door. A reasonable officer, and we've cited the case law, can assume that they've already taken the steps. He can infer that they've already taken the steps to identify themselves and that the police are known. So when he goes into the backyard, not only does he stay state police prior to shooting, but he has, from his position, can believe that the person back there already knows that the police are on the property. There's a marked cruiser. He's seeing a marked cruiser at the front door, an officer at the front door, all these things before he ever even leaves. The reason he leaves is because he hears the word gun said. The word gun said, then Mr. Naselrode, when he's in the backyard, can't refute that. Mrs. Naselrode testified she told the state police, I heard the word gun said. And there's no evidence in the record that says I did not say that. That was not developed in the record, so there's what we have. So we're back again to Mr. Mabry, looking at him as an exposed position in the backyard facing someone. A lot of the cases relied upon the plaintiff involved rifles. This is not a rifle. This is a gun that has already been drawn from a holster. A lot of the other cases that are cited by plaintiffs are whether or not it was pulled up or whether it was down. Well, this was obviously pulled up because we know it was out of the holster. So that part has been satisfied. What's attempting to be done here is a bright-line test of pointing or not pointing a gun. And so the plaintiff has put together several cases and said, here's the clearly established law that unless there's testimony I pointed this, which he does say the word point, Mr. Naselrode does it a few times in his testimony, but unless you say I directly pointed it, then you can never have qualified immunity or a justified use of force. That is not the clearly established law. You cannot piece together, in my opinion respectfully, four or five cases and say here's the law and so I'm saying this is now the test. That is not the test. These type of things are judged on the facts and the circumstances that existed at the time. And I have described for you as to my client those facts when he decided to use force based upon the threat, the serious threat, not only to himself because he's exposed, but also the threat to Craycraft who has seen that threat and then retreated. My client is standing at the fire pit. There's a picture not only in the record but in the brief of where he is standing. There's no bulletproof vest. He's standing there with a person with a pistol drawn. And he's already said, I went to pull it. I saw Mabry behind me and I went to pull it. And then he's turning back and forth. And so these are the facts in which summary judgment should be affirmed in my client's favor as to no constitutional violation or as the district court held on the alternative of qualified immunity. Thank you, Your Honors. Thank you, Counsel. Rebuttal? Yes, Your Honor. Thank you. With regard to Deputy Craycraft's argument that it was not clearly established that his actions didn't fall within the knock and talk exception to the warrant requirement, this conduct happened seven months after Florida v. Hardeen's. That's a March 2013 case. This activity happened in October of 2013. And as Judge White observed, this isn't a case that falls within this confusion spawned by Hardesty and Turk. It's not a situation where they're looking for an alternate door. So that doesn't involve the situation. This is an attempt to shoehorn a Terry stop in someone's backyard into the knock and talk exception. And no law enforcement officer could reasonably believe that the limited and consensual knock and talk exception permits a non-consensual intrusion other than at the doorstep. In effect, they're telling you that the Girl Scout can't just ring the doorbell but can chase you in the backyard and try to hawk Samoas and shortbreads to you. And that's just simply not the law. With regard to the malicious prosecution claim, the Burley case that's cited in the footnote of Deputy Craycraft's fourth brief isn't a summary judgment case. It isn't a case where the summary judgment on that claim was reversed and remanded. I think it was a default judgment case. In any event, it's also a firm in part, reverse in part, and remand. It's not in the same procedural posture at all. This claim went back to the trial court. There's no way to read the prior opinion in this case other than that. The only other comments I would make are with regard to the argument on behalf of Trooper Mabry. The drop it, drop it, drop it, the suggestion that there was a lengthy amount of time between these three declarations to drop it is contradicted by the record. Mr. Naslerod says that happened instantaneously, followed by his first recollection of any mention of police, and then he was shot before he had a time to react. Also, the argument that the principle upon which we are premising our claim that the use of force was unconstitutional and clearly established doesn't depend on the difference between a long gun and a rifle. And attempting to draw that distinction is an attempt to draw it in a manner that at a granular level that the precedent says is inappropriate. Thank you, Your Honors. Thank you, Counsel. The case will be submitted.